1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

MARK L. HEINAMAN,

8

Plaintiff,

Case No. 2:14-cv-01884-RFB-GWF

**ORDER**

9

v.

Plaintiff's Motion for Partial Summary
Judgment (ECF No. 14)

10
11

FIDELITY & GUARANTY LIFE
INSURANCE COMPANY

Defendant.

Defendant's Motion for Summary Judgment
(ECF No. 18)

12
13

## I.    INTRODUCTION

14
15
16
17

Before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 18). This case arises from Defendant's denial of Plaintiff's disability coverage in 2009. For the reasons discussed below, the Plaintiff's Motion is GRANTED and Defendants' Motion is GRANTED in part and DENIED in part.

18
19

## II.    BACKGROUND

20
21
22

This case was removed on November 10, 2014 on the basis of diversity jurisdiction. ECF No. 1.  Plaintiff filed for a motion for Partial Summary Judgment on July 30, 2015. ECF No. 14. Defendant filed a Motion for Summary Judgment on August 28, 2015. ECF No. 18.

23
24

## III.    LEGAL STANDARD

25
26
27
28

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering

1    the propriety of summary judgment, the court views all facts and draws all inferences in the light

2    most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir.

3    2014). If the movant has carried its burden, the non-moving party "must do more than simply show

4    that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a

5    whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

6    issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation

7    marks omitted).

8

9            **IV.    UNDISPUTED AND DISPUTED FACTS**

10           The Court incorporates the undisputed and disputed facts outlined in the hearing held on

11   February 10, 2016. To summarize, the Court finds that the parties do not dispute the following

12   facts: Plaintiff obtained a life insurance policy including a disability rider in March 2004.  This

13   disability rider contained a three month waiting period and provided for a monthly benefit of

14   $2,600 per month for a maximum of twenty-four months. The disability rider included a clause

15   stating the following: "We will not contest this rider's benefit for any Insured or Covered

16   Dependent based statements made in an application after that benefit has been in effect during the

17   lifetime of that Insured or Covered Dependent 2 years from: the certificate's Date of issue if part

18   of the certificate on that date; or the effective date of that Insured's or Covered Dependent's benefit

19   if made a part of the certificate after the certificate's Date of issue." From March 2004 through the

20   present date, Mr. Heinaman has paid the $1,922.00 annual insurance premium required under the

21   Policy. Mr. Heinaman underwent cervical spine fusion on or about July 14, 2009, due to

22   degenerative disc disease and cervical radiculitis. The surgery did not significantly help his neck

23   and upper back pain and Mr. Heinaman began suffering from depression. Mr. Heinaman submitted

24   a claim against his policy under the disability rider on or about March 24, 2013. Mr. Heinaman's

25   claim was denied on October 18, 2013 for multiple reasons, stemming for alleged

26   misrepresentations he had made in his Application for life insurance, pertaining to his medical

27   history. In November 2013 and February 2014, Mr. Heinaman sent an email and a letter requesting

28   reconsideration. Defendant never responded to these letters.

1    The parties dispute whether the time it took to deny Plaintiff's claim was unreasonably

2    long.

3

4    **V.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF**

5    **NO. 14**

6    Plaintiff seeks partial summary judgment on its first cause of action regarding breach of

7    insurance contract. For the reasons stated below, the Court grants Plaintiff's motion.

8    **A.  Legal Standard: breach of contract**

9    "Basic contract principles require, for an enforceable contract, an offer and acceptance,

10   meeting of the minds, and consideration."  May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005).

11   Breach of contract is "a material failure of performance of a duty arising under or imposed by

12   agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987).  A breach of contract

13   claim under Nevada law requires (1) the existence of a valid contract,  (2) a breach by the

14   defendant, and  (3) damage as a result of the breach.  Richardson v. Jones, 1 Nev. 405, 409 (1865);

15   Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

16   In Nevada, courts must enforce insurance contracts as written to effectuate the parties'

17   intent unless doing so will violate public policy. Farmers Ins. Exch. v. Neal, 64 P.3d 472, 473

18   (Nev. 2003). Nevada courts view the policy's language "from the perspective of one not trained in

19   law and give plain and ordinary meaning to the terms." Farmers Ins. Exch., 64 P.3d at 472

20   (quotations omitted).

21   Because an insurance policy is a contract of adhesion, courts broadly interpret the policy's

22   language to afford the insured the greatest possible coverage. United Nat'l Ins. Co. v. Frontier Ins.

23   Co., Inc., 99 P.3d 1153, 1156–57 (Nev. 2004). "An insurance policy may restrict coverage only if

24   the policy's language clearly and distinctly communicates to the insured the nature of the

25   limitation." Id.  Nevada construes any ambiguity or uncertainty in an insurance policy against the

26   insurer and in favor of the insured. Id.

27   "In contract matters, the jury may be charged with deciding any factual disputes. But in the

28   absence of ambiguity or other factual complexities, contract interpretation presents a question of

law for the district court to decide." <u>Fed. Ins. Co. v. Coast Converters</u>, 339 P.3d 1281, 1284 (Nev. 2014) (internal citations and quotations omitted).

### i.   Incontestability Clauses for Disability Coverage

In Nevada, NRS 688A.370 governs incontestability clauses for disability claims. The statute provides:

> "After 3 years from the date of issue of a life insurance policy or of a supplemental contract thereto providing total and permanent disability benefits or additional benefits in the event of death by accident or accidental means, **no misstatements, except fraudulent misstatements, made by the applicant in the application for the policy shall be used to deny a claim for such total and permanent disability commencing, or for such additional benefits in the event of death by accident or accidental means occurring, after the expiration of such 3-year period.** This subsection shall not be so construed as to preclude the assertion at any time of defenses based upon provisions with respect to such benefits which exclude or restrict coverage."

(emphasis added).

While Nevada state courts have not directly addressed incontestability clauses, District Courts of Nevada have. "Under Nevada law, an insurance policy may include a contestability clause provision of not longer than the first two years of the policy's life. Further, an insurer is entitled to a reasonable amount of time to conduct a contestability investigation. These contestability investigations are routine and are 'a customary practice in the insurance field.'" <u>Downs v. River City Grp., LLC</u>, No. 3:11-CV-00885-LRH, 2013 WL 4506141, at *3 (D. Nev. Aug. 22, 2013) (internal citations and quotations omitted).

### B.  Analysis

In spite of the incontestability clause contained in the disability rider of Plaintiff's insurance plan and the plain language of NRS 688A.370, Defendant rejected Plaintiff's disability claim more than three years after the date of issuance, because of alleged misstatements made in his insurance application. The Court finds that the Defendant breached the terms of its contract by

1    doing so, on the basis of the incontestability clause contained in the disability rider, as well as the

2    plain language of NRS 688A.370.

3        The Court finds that NRS 688A.370 expressly prevents insurance companies from denying

4    disability benefits on the basis of misstatements made in the application for a policy after three

5    years from the date of issuance. The Court does not read the last sentence of the statute to allow

6    for denial of coverage on the basis of a misstatement; to read the statute in this way would negate

7    the clear language of the first portion of the statute, which expressly precludes denial based on

8    misstatements except as to fraudulent statements. Therefore, based on the clear language of NRS

9    688A.370, as well as the incontestability clause included in the disability waiver, the Defendant

10   could not deny Plaintiff his disability benefits for which he dutifully paid, based on alleged

11   misstatements made in his application.  Importantly, there is no basis in the record for claiming or

12   finding fraud in the context of the alleged misstatements in this case. The Court finds that

13   Defendant improperly denied the claim and therefore violated NRS 688A.370, and also breached

14   the terms of Plaintiff's contract based on the incontestability clause in the disability rider.

15       Therefore, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment. ECF No.

16   14.

17

18   **VI.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 18**

19       Having ruled in favor for Plaintiff on the first cause of action, the Court considers the

20   remaining causes of action.

21              **A.  Unjust Enrichment**

22       "Unjust enrichment exists when the plaintiff (a) confers a benefit on the defendant, (b) the

23   defendant appreciates such benefit, and (c) there is acceptance and retention by the defendant of

24   such benefit under circumstances such that it would be inequitable for him to retain the benefit

25   without payment of the value thereof." Certified Fire Prot. Inc. v. Precision Constr., 283 P.3d 250,

26   257 (Nev. 2012) (citations omitted). "Benefit in the unjust enrichment context can include

27   services beneficial to or at the request of the other, denotes any form of advantage, and is not

28   confined to retention of money or property."  Certified Fire Prot., 283 P.3d at 257 (internal

quotation marks omitted). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement. 'The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for].'" Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d 182, 187 (Nev. 1997).

Defendant argues that unjust enrichment exists only as an equitable substitute for a contract, and that because a contract exists here, this cause of action is unavailable. Plaintiff argues that under Rule 8(d), he is entitled to bring alternate theories of recovery in his Complaint. Further, Plaintiff argues he is entitled to plead in the alternative a cause of action for unjust enrichment against F&G in the event F&G attempts to rescind or void the Policy.

However, having found that a valid contract exists, and having ruled in favor of the Plaintiff on the breach of contract claim, the Court GRANTS dismissal of the unjust enrichment claim.

## B.  Specific Performance

Specific performance is a form of contractual remedy and not an independent cause of action. See Carcione v. Clark, 618 P.2d 346, 348 (Nev. 1990). "Equity regards as done what in good conscience ought to be done. Specific performance is available when the terms of the contract are definite and certain, the remedy at law is inadequate, the plaintiff has tendered performance, and the court is willing to order it." Carcione, 618 P.2d at 348 (internal citations omitted). The Court, and the Plaintiff, agrees. Plaintiff has voluntarily dismissed this cause of action. Therefore the Court dismisses Plaintiff's specific performance claim as an independent cause of action and considers it a form of relief for its breach of contract claim.

The Court therefore GRANTS Defendant's motion as to the specific performance claim.

## C.  Bad Faith

Under Nevada law, an implied covenant of good faith and fair dealing exists in every contract.  Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (Nev. 1993). "When one party

performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (Nev. 1991).

In the case of insurance, "[t]he relationship of an insured to an insurer is one of special confidence. A consumer buys insurance for security, protection, and peace of mind. While an insured assumes various duties under an insurance contract—such as the timely payment of premiums—the insurer assumes the concomitant duty to negotiate with its insureds in good faith and to deal with them fairly." Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 956 (Nev. 1998), as amended (Feb. 19, 1999) (quoting Ainsworth v. Combined Insurance Co., 763 P.2d 673, 676 (Nev. 1988)).

The Nevada Supreme Court has held that "[b]ad faith involves an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." Am. Excess Ins. Co. v. MGM Grand Hotels, Inc., 729 P.2d 1352, 1354-55 (Nev. 1986). "Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." Guaranty Nat'l Ins. Co. v. Potter, 912 P.2d 267, 272 (Nev. 1996)

"[A] jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct." United Fire Ins. Co. v. McClelland, 780 P.2d 193, 197 (Nev. 1989).

The Defendant argues that the evidence does not support a bad faith claim for the following reasons. First, it believed that denial was appropriate under the policy—specifically the language stating that "No disability income will be paid for any disability which results from ... Bodily injury or disease, occurring before the effective date of this rider, which was not disclosed on the application" (Def.'s Mot. Summ. J., Ex. B at 2), and other provisions of the Nevada Revised Statute, in particular NRS 688A.170, which provides that "[a] clause in any policy of life insurance providing that such policy shall be incontestable after a specified period shall preclude only a contest of the validity of the policy, and *shall not preclude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage, whether or not such*

*restrictions or exclusions are excepted in such clause*." (emphasis added). Second, the additional time period it took to get complete records from Dr. Darmal does not transform the handling of this claim into "bad faith." Third, that this argument is supported by expert opinion of Fidelity's claims handling expert, Barbara K. Mueller. Def.'s Mot. Summ. J., Ex. F at 1-2.

The Plaintiff responds by pointing to the following as instances of bad faith. First, the Defendant converted Plaintiff's disability claim clearly based on depression and anxiety, into a disability claim based on a back injury. Second, Defendant initially internally approved Plaintiff's claim and then later rejected it. Third, Defendant claimed that it rejected Plaintiff's claim based in part on its assertion that Plaintiff did not disclose he was a smoker in the Application, where Plaintiff did make this disclosure and paid tobacco premiums. Opp'n, Ex. 16. Last, Plaintiff argues that Defendant's clear violation of the incontestability clause, and NRS 688A.370 establishes bad faith in Defendant's denial of coverage.

In its Reply, Defendant argues that Plaintiff failed to allege damages; the Court rejects this argument, finding that Plaintiff has clearly established damages in the form of Defendant's failure to cover his disability, continuing to charge him a premium on his policy nonetheless, and stress and anxiety as a result of Defendant's actions.

The Court finds that the question of whether the Defendant acted in bad faith based on its actions in denying Plaintiff's claim is a question of fact for the jury. United Fire Ins. Co. v. McClelland, 780 P.2d 193, 197 (Nev. 1989). Specifically, the Court finds that, while as a matter of law the incontestability clause in the disability rider, and NRS 688A.370 prevents denial of benefits based on misstatements, a reasonable juror could find that the denial did not rise to the level of bad faith when considering other language in the disability rider and NRS 688A.170, which arguably could provide a basis for denial.

Therefore the Court DENIES Defendant's motion as to the bad faith claim.

### D.  Unfair Claims Practices Act (UCPA) Claims

"The Unfair Insurance Practices Act authorizes a private right of action for violations of a number of unfair insurance practices, including '[m]isrepresenting to insureds or claimants

pertinent facts or insurance policy provisions relating to any coverage,' § 686A.310(1)(a)." Humana Inc. v. Forsyth, 525 U.S. 299, 312 (1999).

"Moreover, the Act is not hermetically sealed; it does not exclude application of other state laws, statutory or decisional. Specifically, Nevada law provides that an insurer is under a common-law duty to negotiate with its insureds in good faith and to deal with them fairly. Furthermore, aggrieved insured parties may be awarded punitive damages if a jury finds clear and convincing evidence that the insurer is guilty of oppression, fraud or malice. Nevada's punitive damages statute places certain limits on those damages-three times the amount of compensatory damages if they are more than $100,000, and $300,000 if compensatories are less than $100,000.  But the same law adds that these limits do not apply to claims against '[a]n insurer who acts in bad faith regarding its obligations to provide insurance coverage.'" Id. at 312-13 (internal citation omitted).

"In Nevada, insurance contracts are directly regulated by statutes which prohibit deceptive advertising and other unfair trade practices." Ainsworth v. Combined Ins. Co. of Am., 763 P.2d 673, 676 n. 1 (Nev. 1988).

The Court addresses each of the alleged UCPA violations individually.

  **1. NRS 686A.310(1)(a) Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.**

Plaintiff does not present specific evidence of misrepresentations of pertinent facts or policy provisions relating to coverage. Rather, Plaintiff argues that he was wrongly denied coverage.

The Court therefore GRANTS Defendant summary judgment on NRS 686A.310(1)(a).

  **2. NRS 686A.310(1)(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.**

Plaintiff appears to argue that because Plaintiff notified the Defendant of his claim on March 22, 2013, approved on June 24, 2013, and then denied on October 18, 2013, the Defendant failed to act reasonably promptly upon communications. Plaintiff also appears to argue that

1  Defendant was not reasonably prompt in responding to communications subsequent to the denial

2  of coverage requesting reconsideration of his claim.

3        While the Court does not find that Defendant failed to act promptly regarding initial

4  communications leading up to its denial on October 18, 2013, the Court finds that Defendant's

5  subsequent failure to respond to requests for reconsideration sent by Plaintiff, until he obtained

6  counsel, which Defendant does not dispute, is a violation of this subsection. In November 2013,

7  Plaintiff sent an email to F&G's representative (i) disputing the denial of his Claim; (ii) attaching

8  additional documentation; and (iii) requesting that F&G reconsider the Claim. Decl. at ¶ 52 and

9  53. F&G never responded to Plaintiff's first request for reconsideration. On February 25, 2014,

10 Plaintiff sent F&G another letter requesting that F&G reconsider its position given that his Claim

11 was based on his major depression and anxiety, not the tailbone injury, neck and back pain or even

12 the degenerative disc disease and cervical radiculitis. Opp'n, Ex. 14. F&G never responded to

13 Plaintiff's letter.

14       Therefore the Court GRANTS summary judgment in favor of the Plaintiff on NRS

15 686A.310(1)(b).

16       **3.  NRS 686A.310(1)(d) Failing to affirm or deny coverage of claims within a**

17                 **reasonable time after proof of loss requirements have been completed and**

18                 **submitted by the insured.**

19       Plaintiff alleges that the time it took for Defendant to deny Plaintiff's claim (approximately

20 seven months from March to October 2013) was unreasonable, and that the requests for additional

21 information were unnecessary and needlessly delayed the time it took for Defendant to make a

22 decision as to coverage. Defendant argues that the time it took to deny the claim was reasonable,

23 given that it did not receive all of the required documents from Plaintiff's doctor. While Defendant

24 does not specify the date at which it claims to have finally received the information, Defendant

25 sent Plaintiff a letter claiming it required additional information as late as September 2013.

26       The Nevada Supreme Court has denied summary judgment as to NRS 686A.310(1)(d)

27 where an insurance company failed to affirm or deny coverage after ten months on a claim

28

involving a roll-over accident. <u>Estate of LoMastro ex rel. LoMastro v. Am. Family Ins. Group</u>, 195 P.3d 339, 351–52 (Nev.2008).

Because material facts remain in dispute, as to whether or not the additional records were necessary and therefore  justified the seven month delay, the Court DENIES summary judgment as to NRS 686A.310(1)(d).

> **4. NRS 686A.310(1)(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.**

While the Court rules in favor of the Plaintiff on the breach of contract claim, the Court finds that whether liability of the insurer was reasonably clear in light of the incontestability clause and NRS 668A.370 at the time Defendant denied the claim is a question of fact to be determined by a jury.

The Court therefore DENIES summary judgment on NRS 686A.310(1)(e).

> **5. NRS 686A.310(1)(f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.**

Based on the plain language of this statute, the Plaintiff cannot prevail, as he has not received offers for amounts similar to the amounts recovered and there has not been evidence of a diminished offer. Here, Plaintiff has yet to receive payment from Defendant. Therefore the Court GRANTS summary judgment in favor of the Defendant on NRS 686A.310(1)(f).

> **6. NRS 686A.310(1)(g) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.**

/ / /

/ / /

1

2    Plaintiff has failed to indicate what if any written or printed advertising material

3    accompanying or made part of an application this statute applies to. Therefore the Court GRANTS

4    summary judgment in favor of the Defendant on NRS 686A.310(1)(g).

5        **7. NRS 686A.310(1)(k) Delaying the investigation or payment of claims by**

6           **requiring an insured or a claimant, or the physician of either, to submit a**

7           **preliminary claim report, and then requiring the subsequent submission**

8           **of formal proof of loss forms, both of which submissions contain**

9           **substantially the same information.**

10   Despite its letter initially approving Heinaman's Claim on June 24, 2013, F&G never

11   provided him with a check in the amount of $39,000, nor has it made any payments to Plaintiff.

12   Rather, Defendant continued to require additional information be sent by his attending physician.

13   Defendant argues that the information later obtained by the same attending physician who

14   sent his initial report (upon which coverage was granted) was not substantially the same, because

15   it contained information that showed that Plaintiff's claim was excluded under his policy—namely,

16   the Court understands, the prior hockey injury and neck and back injury.

17   The Court finds that an issue of fact exists as to the initial internal decision to grant

18   disability coverage based on Dr. Darmal's report and subsequent insistence upon additional reports

19   detailing prior injuries and past medical records, as a basis by which to later deny coverage, which

20   is precisely what this provision is aimed against.

21   The Court therefore DENIES summary judgment on NRS 686A.310(1)(k).

22       **8. 686A.310(1)(l) Failing to settle claims promptly, where liability has become**

23          **reasonably clear, under one portion of the insurance policy coverage in**

24          **order to influence settlements under other portions of the insurance policy**

25          **coverage.**

26   The Court does not find that this provision applies; Plaintiff only seeks payment under his

27   disability rider.  There is, thus, only one portion of the policy at issue. Therefore the Court

28   GRANTS summary judgment in favor of the Defendant on 686A.310(1)(l).

1    **9. 686A.310(1)(n) Failing to provide promptly to an insured a reasonable**
2       **explanation of the basis in the insurance policy, with respect to the facts of**
3       **the insured's claim and the applicable law, for the denial of the claim or**
4       **for an offer to settle or compromise the claim.**

5       The Court finds that the letter denying coverage provides the basis for its decision. The
6    letter identifies the policy provision allegedly in breach, and specifies the portions of the medical
7    record in contradiction of his application. Opp'n Ex. 11. Therefore the Court GRANTS summary
8    judgment in favor of the Defendant on NRS 686A.310(1)(n).

9                              **E.  Punitive Damages**

10      Under NRS 42.005, a Plaintiff may recover punitive damages "where it is proven by clear
11   and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express
12   or implied."  "For the purposes of an action brought against an insurer who acts in bad faith
13   regarding its obligations to provide insurance coverage, the definitions set forth in NRS 42.001 are
14   not applicable and the corresponding provisions of the common law apply." NRS § 42.005.

15      Proof of bad faith, in and of itself, does not establish liability for punitive damages. United
16   Fire Insurance Company v. McClelland, 780 P.2d 193 (Nev. 1989). The Nevada Supreme Court
17   has "defined oppression as 'a conscious disregard for the rights of others which constitutes an act
18   of subjecting plaintiffs to cruel and unjust hardship.'" Id. at 198. See, e.g., Id., 780 P.2d at 198
19   ("The McClellands claim that United Fire's failure to notify the insureds of its ejection from
20   California and its further failure to investigate or reveal the unworthiness of California Life was
21   conduct done in conscious disregard for the insureds' rights which constituted an act of subjecting
22   Kenneth to cruel and unjust hardship. We agree.").

23      "A jury may award punitive damages where the defendant has been guilty of fraud, malice,
24   or oppression. NRS 42.010." Ainsworth v. Combined Ins. Co. of Am., 763 P.2d 673, 675 (Nev.
25   1988). "Traditionally this court has held that the amount of a punitive damages award was
26   subjective, and therefore best left to the jury's determination." Ainsworth, 763 P.2d at 677

27      "The district court has discretion to determine whether the defendant's conduct merits
28   punitive damages as a matter of law." Bongiovi v. Sullivan, 138 P.3d 433, 451 (Nev. 2006).

1    In this case, Plaintiff applied, received, and paid for disability coverage in the event that he

2    became disabled. This rider also contained an incontestability clause even more generous than that

3    required by statute. When he suffered from a debilitating degenerative condition to his back and

4    subsequently became depressed as a result of his inability to work, it was at this time that he most

5    needed coverage under the policy. Therefore, the Court finds that the evidence is sufficient for a

6    jury to find that the Defendant acted oppressively, subjecting plaintiff to cruel and unjust hardship

7    as to some, but not all, of his claims.

8    Namely, in light of the incontestability clause and NRS 688A.370, a reasonable juror could

9    find oppressive Defendant's actions in relation to the breach of contract claim, the bad faith claim,

10   and NRS 686A.310(1)(e).

11   The Court also finds that a reasonable juror could find oppressive Defendant's failure to

12   respond to Plaintiff's requests for reconsideration, in clear violation of NRS 686A.310(1)(b).

13   The Court GRANTS Defendant's motion as to the remaining claims.

14

15   **VII.     CONCLUSION**

16   The Court therefore **GRANTS** Plaintiff's Motion for Partial Summary Judgment. ECF No.

17   14.

18   The Court **GRANTS** in part and **DENIES** in part Defendant's Motion for Summary

19   Judgment. ECF No. 18.

20       The Court **DENIES** Defendant's motion as to the breach of contract claim.

21       The Court **GRANTS** Defendant's motion as to the specific performance claim.

22       The Court **DENIES** Defendant's motion as to the bad faith claim.

23   The Court **GRANTS** in part and **DENIES** in part the UCPA claims.

24       • The Court **GRANTS** summary judgment on 686A.310(1)(a) in favor of

25         Defendant.

26       • The Court **GRANTS** summary judgment on 686A.310(1)(b) in favor of

27         the Plaintiff.

28       • The Court **DENIES** summary judgment on 686A.310(1)(d)

- 14 -

- The Court **DENIES** summary judgment on 686A.310(1)(e).
- The Court **GRANTS** summary judgment in favor of the Defendant on 686A.310(1)(f).
- The Court **GRANTS** summary judgment in favor of the Defendant on 686A.310(1)(g).
- The Court **DENIES** summary judgment on 686A.310(1)(k).
- Therefore the Court **GRANTS** summary judgment in favor of the Defendant on 686A.310(1)(l).
- The Court **GRANTS** summary judgment in favor of the Defendant on 686A.310(1)(n).

The Court DENIES in part and GRANTS in part Defendant's motion as to punitive damages. The Court will allow punitive damages for the following claims:

- breach of contract;
- bad faith;
- NRS 686A.310(1)(b) and (e).

**DATED**:  April 5, 2016.

_____

RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE